UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

NORMAND FOGARTY,

    Plaintiff,

    v.                                                  CAUSE NO. 3:21-CV-129-JD-MGG

WEXFORD MEDICAL SERVICES, et al.,

    Defendants.

OPINION AND ORDER

Normand Fogarty, a prisoner proceeding without a lawyer, filed an amended complaint under 42 U.S.C. § 1983. (ECF 50.) An amended complaint supersedes all earlier pleadings and controls the case from that point forward. *French v. Wachovia Bank*, 574 F.3d 830, 835 (7th Cir. 2009). Pursuant to 28 U.S.C. § 1915A, the court must screen the amended complaint to determine whether it states a claim for relief. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nevertheless, the court must bear in mind that "[a] document filed pro se is to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citation omitted).

In his amended complaint, Mr. Fogarty alleges that he is not receiving proper treatment by medical staff at Westville Correctional Facility ("Westville") for chronic

constipation. He claims that on May 14, 2021, he put in a sick call request to alert medical staff that the Dulcolax he had been given was "no longer effective and [his] bowels [were] not moving." He claims he was seen by an unnamed "triage" nurse, who spoke with Nurse Practitioner Dishita Patel, who in turn prescribed a bottle of citrate magnesium. For reasons not disclosed in the amended complaint, there was a delay in his receipt of the medication.

On May 27, 2021, he was seen in the urgent care by Nurse Josh Kuiper, who gave him the citrate magnesium previously prescribed by Nurse Practitioner Patel. He claims Nurse Kuiper told him, "I'm sick of seeing you here, you are JUST A NUMBER and they are never going to treat you, I have seen it many times. Keep filing your lawsuits nothing will change." (ECF 50 at 3.) He filed a grievance against Nurse Kuiper for "being unprofessional towards me and blaming by digestive issues on my disabilities." (*Id.* at 4.) He sent the grievance to Nurse Dorothy Livers, the Health Care Administrator at Westville. He claims she has taken no action to address Nurse Kuiper's unprofessionalism. It can be discerned from the amended complaint that Mr. Fogarty underwent a stomach x-ray the day after seeing Nurse Kuiper, and that the x-ray was "negative for impaction." (*Id.*)

On June 10, 2021, he saw Nurse Kuiper again about constipation, and Nurse Kuiper referred him to the doctor. He had a visit scheduled on June 14, 2021, with Dr. Andrew Liaw, but it was cancelled for unknown reasons. On June 23, 2021, he sent another sick call request complaining about constipation, but did not get any response. On July 9, 2021, he told a correctional guard he was still having problems with

constipation. The guard told him he called medical staff in the prison's urgent care, "who said they would notify the Head Nurse Dorothy Livers." He claims that as of the date his amended complaint was filed—July 12, 2021—he had not yet seen a doctor. Based on these events, he sues Dr. Liaw, Dr. James Jackson, Nurse Livers, Nurse Practitioner Patel, Warden John Galipeau, and Wexford Medical Services ("Wexford"), seeking compensatory and punitive damages, in addition to other relief.

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must allege (1) that he had an objectively seriously medical need and (2) that the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize the need for medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 ( citation and internal quotation marks omitted).

At the same time, a prisoner is not required to show that he was "literally ignored" to establish deliberate indifference. *Berry v. Peterman*, 604 F.3d 435, 441 (7th Cir. 2010). "[I]nexplicable delay in responding to an inmate's serious medical condition

3

can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted). Additionally, a "prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition." *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011). "[A] doctor's choice of the easier and less efficacious treatment for an objectively serious medical condition" can amount to deliberate indifference. *Berry*, 604 F.3d at 441.

Giving Mr. Fogarty the inferences to which he is entitled at this stage, he has alleged that he has a serious medical need. The subjective prong of the inquiry poses more difficulty. He sues Dr. Liaw, but his only allegation against the doctor is that he had an appointment scheduled with him in June 2021 that was cancelled for unknown reasons. There is no plausible basis to infer that Dr. Liaw was the one who cancelled the appointment or that he was otherwise deliberately indifferent to Mr. Fogarty's medical issues. He will not be permitted to proceed against this defendant.

As to Nurse Livers, he alleges that she ignored his grievance about "professional misconduct" by Nurse Kuiper. The Constitution does not require that prisons provide a grievance procedure at all, nor does the existence of an internal complaint procedure create any constitutionally guaranteed rights. *Daniel v. Cook Cty.*, 833 F.3d 728, 736 (7th Cir. 2016). Additionally, even though she is the Health Care Administrator for the prison, she cannot be held liable for the misconduct of other medical staff. *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). Nevertheless, the amended complaint can be

4

read to allege that Nurse Livers was notified several times in May and June 2021 that Mr. Fogarty was experiencing constipation that was not being addressed by the medication previously given to him. As of mid-July 2021, he still had not been seen by a doctor. It can be discerned from the amended complaint that as the Health Care Administrator, Nurse Livers has authority to screen health care requests and schedule appointments with prison doctors. He has alleged enough to proceed on a claim of deliberate indifference against this defendant.

As to Nurse Kuiper, Mr. Fogarty does not include him in the section where he is asked to list the defendants, but given the allegations in the narrative section, it appears he may be trying to sue this individual too. For completeness, the court addresses any potential claim against Nurse Kuiper. If Nurse Kuiper told Mr. Fogarty he was "tired of seeing him" or was rude to him, this was indeed unprofessional, but his actions as described by Mr. Fogarty do not show deliberate indifference. According to Mr. Fogarty, Nurse Kuiper gave him the medication previously prescribed by Nurse Practitioner Patel when he reported the Dulcolax was not working. As far as can be discerned, this medication was effective in relieving his constipation, at least in the short term. When he saw Nurse Kuiper again for the same problem a few weeks later, Nurse Kuiper scheduled him to see the doctor. Although the appointment was later cancelled, there is no factual content to suggest Nurse Kuiper was the one who cancelled it, or that he was otherwise deliberately indifferent to Mr. Fogarty's constipation problem. He will not be permitted to proceed against this defendant.

He also sues Nurse Practitioner Patel, but her only involvement as described by Mr. Fogarty was to prescribe a different medication after she was told by other medical staff that Mr. Fogarty reported the Dulcolax was not working. Although there was apparently a delay in his receipt of the new medication, there is no basis in the amended complaint to plausibly infer that the delay was caused by Nurse Practitioner Patel. As far as the amended complaint reveals, the medication she prescribed was later given to him and was effective in the short term in relieving his problem. He will not be permitted to proceed against this defendant.

He also sues Warden Galipeau, but there is no indication the Warden had any personal involvement in Mr. Fogarty's medical care, a requirement for seeking damages against him. *Burks*, 555 F.3d at 596; *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Nevertheless, the amended complaint can be read to seek injunctive relief related to Mr. Fogarty's ongoing need for medical care for chronic constipation. Warden Galipeau has both the authority and the responsibility to ensure that inmates at his facility are provided constitutionally adequate medical treatment as required by the Eighth Amendment. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011). Therefore, Mr. Fogarty will be allowed to proceed on an Eighth Amendment claim against the Warden in his official capacity for injunctive relief related to his ongoing need for medical care.

Finally, Mr. Fogarty sues Wexford, the private company that employed medical staff at Westville at the time of these events.[1] A private company may be held liable for constitutional violations when it performs a state function. *See Hildreth v. Butler*, 960 F.3d 420, 422 (7th Cir. 2020). However, there is no general *respondeat superior* liability under 42 U.S.C. § 1983, and Wexford cannot be held liable solely as the employer of the medical professionals involved in Mr. Fogarty's care. *J.K.J. v. Polk Cty.*, 960 F.3d 367, 377 (7th Cir. 2020).

A private company performing a public function can also be held liable to the same extent as a government actor under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). *See Rice v. Corr. Med. Servs.*, 675 F.3d 650, 675 (7th Cir. 2012). Under *Monell*, municipal entities or private companies performing a government function "cannot be held liable for the unconstitutional acts of their employees unless those acts were carried out pursuant to an official custom or policy." *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008) (citations omitted). "The 'official policy' requirement for liability under § 1983 is to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible." *Id.* (citations, internal quotation marks, and emphasis omitted). There is no "heightened" pleading

---

[1] The court notes that Wexford's contract with Indiana Department of Correction terminated on July 1, 2021, and it was replaced by a different company, Centurion Health. *See* Centurion Health Provides Correctional Health for Indiana Department of Correction, Cision PR Newswire, July 12, 2021, *available at* https://www.prnewswire.com/news-releases/centurion-health-provides-correctional-health-for-indiana-department-of-correction-301331594.html (last visited Aug. 4, 2021). Mr. Fogarty's amended complaint does not include any allegations about Centurion Health.

standard applicable to *Monell* claims. *White v. City of Chicago*, 829 F.3d 837, 843 (7th Cir. 2016). Nevertheless, the "plausibility" standard set forth in *Twombly* and *Iqbal* applies equally to *Monell* claims. *Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017); *McCauley v. City of Chicago*, 671 F.3d 611, 618 (7th Cir. 2011).

Mr. Fogarty's *Monell* claim appears to be premised on Nurse Kuiper's alleged comment about him being "just a number" and having seen "many" situations wherein inmates were not given proper medical treatment. This allegation is too vague to state a plausible *Monell* claim. The purpose of the official policy requirement is to "distinguish between the isolated wrongdoing of one or a few rogue employees and other, more widespread practices." *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 654 (7th Cir. 2021). Mr. Fogarty's suggestion that Wexford has an official policy of simply ignoring inmates' medical complaints conflicts with his account that he was seen in the urgent care twice for constipation in the span of a few weeks, prescribed two different medications, and given a stomach x-ray. Although he is frustrated that the problem persists, there is no plausible basis in the complaint to infer that his injury was caused by an official policy of Wexford. *Dixon v. Cty. of Cook*, 819 F.3d 343, 348 (7th Cir. 2016) (observing that *Monell* requires a plaintiff to show that an official policy "was the 'moving force' behind his constitutional injury").

To the extent he is trying to allege a widespread practice, his allegations are again too vague to support a plausible *Monell* claim. To succeed on a widespread practice theory of *Monell* liability, "the plaintiff must demonstrate that the practice is widespread and that the specific violations complained of were not isolated incidents."

8

*Gill*, 850 F.3d at 344. "At the pleading stage . . . a plaintiff pursuing this theory must allege facts that permit the reasonable inference that the practice is so widespread so as to constitute a governmental custom." *Id*. Mr. Fogarty has not done so here. He only describes events pertaining to his own medical care and failings by individual medical staff, namely, Nurse Livers. Although he mentions the comment by Nurse Kuiper, there are no details provided about other alleged instances of improper medical care to suggest that these incidents were so widespread, or involved inmates with similarly serious medical problems, as to constitute an official unconstitutional custom by Wexford.[2] Mr. Fogarty has been granted leave to proceed against Nurse Livers for monetary damages and the Warden for injunctive relief related to his ongoing need for care, but the court finds no basis to permit him to proceed on a claim against this corporate defendant.

For these reasons, the court:

(1) GRANTS the plaintiff leave to proceed against Nurse Dorothy Livers in her personal capacity for monetary damages for failing to provide adequate medical care for his chronic constipation in violation of the Eighth Amendment;

---

[2] The court is aware that there is no "magic number" of incidents needed to support a *Monell* claim. *Glisson v. Indiana Dep't of Corr.*, 849 F.3d 372, 381 (7th Cir. 2017). In the right circumstances, it is possible to allege a *Monell* claim based on only one incident. *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 650 (7th Cir. 2021). As the Circuit has explained: "The key is whether there is a conscious decision not to take action. That can be proven in a number of ways, including but not limited to repeated actions. A single memo or decision showing that the choice not to act is deliberate could also be enough. The critical question under *Monell* remains this: is the action about which the plaintiff is complaining one of the institution itself, or is it merely one undertaken by a subordinate actor?" *Glisson*, 849 F.3d at 381. As explained above, Mr. Fogarty has not plausibly alleged that any deficiency in his care was an act "of the institution itself" rather than a failing of individual medical staff.

(2) GRANTS the plaintiff leave to proceed against Warden John Galipeau in his official capacity on an Eighth Amendment claim to obtain injunctive relief related to his ongoing need for medical care to address his constipation;

(3) DISMISSES all other claims;

(4) DISMISSES Andrew Liaw, Jason Jackson, Nurse Practitioner Patel, and Wexford Medical as defendants;

(5) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Nurse Dorothy Livers at Centurion Health and to send her a copy of this order and the amended complaint pursuant to 28 U.S.C. § 1915(d);

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden John Galipeau at Indiana Department of Correction, and to send him a copy of this order and the amended complaint pursuant to 28 U.S.C. § 1915(d);

(7) ORDERS the Indiana Department of Correction and Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent such information is available; and

(8) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Nurse Dorothy Livers and Warden John Galipeau to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on August 5, 2021

/s/JON E. DEGUILIO
CHIEF JUDGE
UNITED STATES DISTRICT COURT